IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**RAMON LAUREANO-VELEZ**,<br>    Defendant. | Criminal No. 22-365 (PAD/BJM) |

## REPORT AND RECOMMENDATION

On August, 18, 2022, Ramon Laureano-Velez ("Laureano-Velez") was indicted for being a prohibited person (felon) in possession of a firearm and ammunition and for possession of a machine gun. Docket No. ("Dkt.") 1. Laureano-Velez moved to suppress evidence seized during the search of a Kia Forte, Dkt. 33, which the government opposed. Dkt. 40. Both motions were referred to me for a report and recommendation. Dkt. 41. The facts, for purposes of the pending motion to suppress, are not in dispute. Therefore, a hearing is not necessary.[1] For the reasons below, Laureano-Velez's motion should be **DENIED**.

## BACKGROUND

On November 14, 2012, judgment was entered against Laureano-Velez for being a prohibited person (felon) in possession of a firearm. Judgment, *United States v. Ramon Laureano-Velez*, 12-322 (D.P.R. Nov. 14, 2012), ECF No. 36. On November 20, 2020, Laureano-Velez began a three-year term of supervised release. The supervised release conditions provided Laureano-Velez could not commit another federal, state, or local crime, and could not possess a firearm, ammunition, destructive device or any other dangerous weapon. *Id.* at 3. The judgment also imposed the following condition:

> The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. §1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon

---

[1] Lopez-Laureano did not request a hearing in his motion to suppress. Dkt. 33.

Case 3:22-cr-00365-PAD   Document 43   Filed 10/12/23   Page 2 of 7

United States of America v. Ramon Laureano-Velez, Crim. No. 22-365 (PAD/BJM)                    2

> reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. Defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

*Id.* at 4, ¶4.

On September 10, 2021, the U.S. Probation Office ("USPO") filed a motion notifying the court that Laureano-Velez was in violation of his supervised release. The Puerto Rico Police Department ("PRPD") had requested the USPO's assistance in contacting Laureano-Velez as he was a suspect in an incident that occurred in Loíza, Puerto Rico. Dkt. 40-1 at 2; Informative Motion at 2, *United States v. Laureano-Velez*, 12-322 (D.P.R. Sept. 10, 2021), ECF No. 57. The USPO told Laureano-Velez to report to the Carolina Police Station, but he never showed up. The USPO called him multiple times and his phone was off. The USPO also attempted to contact Laureano-Velez at his home and his car-wash business. Both efforts failed. *Id.* Because USPO did not know his whereabouts, and efforts to find him were unsuccessful, they filed this informative motion and requested an arrest warrant be issued. *Id.*

Based on the PRPD's investigation, Laureano-Velez was living with a woman in public housing near the San Francisco Shopping Center in Puerto Nuevo, and he always carried a gun; and he had a rifle in his home and the vehicles he used, one of which was a brown Kia Forte. Dkt. 33-2 at 1; Dkt. 40-3 at 4. On June 29, 2022, PRPD offices were stationed at the entrance of the San Francisco mall to see if Laureano-Velez and one of the vehicles he used entered the mall. *Id.* At 3:30 p.m., PRPD officers saw a brown Kia Forte enter the mall and the driver matched Laureano-Velez's description. Laureano-Velez was arrested when he was exiting the SuperMax Supermarket and walking back to the car. *Id.* Once he was arrested, PRPD requested the assistance of the canine unit to see if the car contained any firearms or controlled substances. *Id.* Two canines, one for firearms and another for controlled substances, walked around the car and alerted the car had both

Case 3:22-cr-00365-PAD   Document 43   Filed 10/12/23   Page 3 of 7

*United States of America v. Ramon Laureano-Velez*, Crim. No. 22-365 (PAD/BJM)                              3

firearms and controlled substances. Dkt. 33-2 at 2; Dkt. 40-3 at 5. The vehicle was sealed and transported to the Hato Rey West precinct. *Id.*

On June 30, 2022, the USPO conducted a search of the Kia Forte. Dkt. 40-3 at 5. During the inspection, the USPO noted a hole in the front passenger door covered with a sticker and duct tape. Dkt 40-2 at 2; Supplemental Informative Motion at 2, *United States v. Ramon Laureano-Velez*, No. 12-322, ECF No. 65. The inspection also revealed a square hole with direct access to the trunk and was hidden behind the cupholder area in the middle backseat. *Id.* The following items were seized:

(1) One 9mm (Aguila Brand) shell casing found under the passenger front seat.

(2) One dark blue Motorola cellphone with black Otterbox cover (IMEI: 352304804564524);

(3) One grey Samsung cellphone with a black GoTo cover (IMEI: 35392959317063);

(4) One black Samsung with a black Otterbox cover;

(5) One USB charger; and

(6) One black charger.

*Id.* Because there seemed to be a hidden compartment in the vehicle, the USPO coordinated with ICE/HSI to inspect the vehicle with an X-ray machine. *Id.* at 3. The x-ray revealed there was an object in the hidden compartment of the trunk. Upon inspection, USPO officers retrieved a black utility bag which contained the following items:

(1) One black Glock 19 Gen 4 9mm caliber pistol with Serial Number VFH112, loaded with a fifteen round capacity magazine containing thirteen rounds.

(2) An external device/chip to allowing the Glock pistol to shoot in fully automatic mode; and

(3) Six high-capacity magazines:

   a. 31-round capacity Glock magazine loaded with 27 rounds;

      b. 31-round capacity Glock magazine loaded with 26 rounds;

      c. 31-round capacity Glock magazine loaded with 26 rounds;

      d. 31-round capacity Glock magazine loaded with 25 rounds;

      e. 31-round capacity Glock magazine loaded with 27 rounds; and

      f. 31-round capacity Glock magazine loaded with 26 rounds.

*Id.*

## DISCUSSION

Laureano-Velez moves to suppress the evidence seized from the Kia Forte on June 30, 2022. He argues the Government needed a warrant to search the vehicle, that there was no reasonable suspicion, and that the search does not fall into any of the exceptions to the warrant requirement – search incident to arrest and exigent circumstances. The government argues it did not require a warrant to search the vehicle because the search was a probation search and there was reasonable suspicion to conduct the search. The government is correct.

### A. Probation Search

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As such, "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One of these exceptions is the probation-search exception.[2] It permits a probation officer to conduct a warrantless search of a supervised releasee

---

[2] Laureano-Velez cites to exceptions that are not applicable to the case, *i.e.*, search incident to arrest and exigent circumstances. The search was conducted under the USPO's authority to conduct a search of Laureano-Velez's vehicle based on reasonable suspicion and was not a search incident to arrest or a search based on exigent circumstances.

Case 3:22-cr-00365-PAD   Document 43   Filed 10/12/23   Page 5 of 7

*United States of America v. Ramon Laureano-Velez*, Crim. No. 22-365 (PAD/BJM)                                           5

who is subject to a search condition if the officer has reasonable suspicion that the supervised releasee is criminally active or otherwise violating the terms of his probation. *United States v. Rodriquez*, 829 F.3d 960, 961-62 (8th Cir. 2016).

Laureano-Velez's condition of supervised release stated that his vehicle could be searched "based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." This lower standard recognizes that "individuals on conditional release have a substantially diminished expectation of privacy." *United States v. Weikert*, 504 F.3d 1, 11 (1st Cir. 2007) (citing *United States v. Knights*, 534 U.S. 112, 119 (2001)). And "[c]ourts have generally not distinguished among [individuals who are on parole, probation and supervised release] for Fourth Amendment purposes." *Id.* at 12. As such, the USPO could perform a warrantless search if there was reasonable suspicion.

Laureano-Velez argues there was no reasonable suspicion to search the vehicle. "Reasonable suspicion requires more than a mere hunch but less than probable cause." *United States v. Wright*, 582 F.3d 199, 205 (1st Cir. 2009) (citing *United States v. Ruidíaz*, 529 F.3d 25, 29 (1st Cir. 2008). "It requires a 'particularized and objective basis' for suspecting that a person is breaking the law . . . and it 'must be based on common sense judgments and inferences about human behavior." *United States v. McGill*, 8 F.4th 617, 623 (8th Cir. 2021).

Here, there was reasonable suspicion to search the vehicle. First, there was information that Laureano-Velez was a suspect in a crime committed in Loíza and failed to report to the Carolina Police Station as requested. Being investigated by the PRPD does not necessarily in and of itself make a suspicion reasonable, but there was information that Laureano-Velez was always armed and that he kept a firearm in the vehicles he uses. Dkt. 40-3 at 4. Additionally, he could not be located once he was told to report to the Carolina Police Station. Not only did he fail to report to

the Carolina Police Station, Laureano-Velez turned off his phone and could not be found at his house or place of business. And both his house and car-wash business were completely closed without signs of having been open for days. Dkt. 40-1 at 2. This could have raised reasonable suspicion as supervised releasees "have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal." *Knights*, 534 U.S. at 120. That is, if supervised releasees like Laureano-Velez get caught committing a crime, they face not only new charges, but also the potential revocation of their supervised release terms.

Second, two canine units walked around the vehicle. Dkt. 40-3 at 5. After the canines walked around the Kia Forte, they sat down by the driver's side of the car, which meant they had detected the presence for firearms and controlled substances. *Id.* This action alone gave USPO enough reasonable suspicion to search the vehicle without a warrant as it was reasonable to infer that firearms or controlled substances would be found in violation of one of Laureano-Velez's conditions of supervised release.

For the foregoing reasons, there was reasonable suspicion to search the vehicle.

**B. Vehicle Owner's Consent**

Laureano-Velez also contends the search of the Kia Forte was unreasonable because the vehicle did not belong to him and the USPO could have requested the owner's consent. However, there was no legal impediment to searching the vehicle even if it was owned by another individual. First, Laureano-Velez's condition of supervision states: "The defendant shall submit his . . . vehicle . . . to a search, conducted by a United States Probation Officer . . . . Defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition." The conditions nowhere state that the USPO needed to ask other occupants for consent to search. Therefore, there was no need to procure the consent of other occupants or owners. Instead,

Case 3:22-cr-00365-PAD   Document 43   Filed 10/12/23   Page 7 of 7

*United States of America v. Ramon Laureano-Velez*, Crim. No. 22-365 (PAD/BJM)                                7

Laureano-Velez had to inform others of the possibility of a search if there was reasonable suspicion. Second, assuming Laureano-Velez does have a privacy interest in the vehicle, "Fourth Amendment rights are personal and may not be asserted vicariously." *United States v. Sanchez*, 943 F.2d 110, 112 (1st Cir. 1991). As such, even if the owner's Fourth Amendment rights were violated because he did not consent to the search, Laureano-Velez can't suppress evidence to be used against him based on the violation of the vehicle owner's Fourth Amendment rights.

Accordingly, Laureano-Velez's motion to suppress the items found in the Kia Forte should be **DENIED**.

## CONCLUSION

For the foregoing reasons, I recommend that Laureano-Velez's motion to suppress be **DENIED.**

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 12th day of October, 2023.

**S/ Bruce J. McGiverin**
BRUCE J. McGIVERIN
United States Magistrate Judge
